**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MILLENNIUM LABORATORIES, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 1:13-cv-11727 |
| AMERITOX, LTD., | |
| Defendant. | |

**AMERITOX, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**RULE 12(b)(6) MOTION TO DISMISS**

Ameritox, Ltd. ("Ameritox") respectfully submits this Memorandum in Support of Its Rule 12(b)(6) Motion to Dismiss ("Motion to Dismiss").  In support of its motion, Ameritox states as follows:

## I.      INTRODUCTION

This lawsuit consists almost entirely of duplicative claims that either have been asserted, or should have been asserted, in prior pending actions in other courts.  In fact, Millennium has already pled some of the current allegations against Ameritox, in some variety, on *three different occasions*.  Aside from this Court, variations of these same causes of action have been alleged in currently pending litigation in the United States District Court for the Middle District of Florida and in Nebraska state court, as well as in a dismissed action that was filed in the United States District Court for the Southern District of California.  These allegations are almost identical; a side-by-side comparison reveals they were likely even drafted by the same lawyers.

Millennium is barred under the doctrine of claim splitting from bringing claims in this Court that it should have (and in many cases were) alleged in the already pending proceeding.  And, in the few instances where Millennium's claims arguably are not covered by the rule against claim splitting, Millennium fails to state viable claims against Ameritox.   Thus, Millennium's Complaint should be dismissed in its entirety.

## II.      BACKGROUND AND PROCEDURAL HISTORY

Ameritox and Millennium provide drug testing and medication monitoring services.  (Dkt. 1 at ¶  1.)  Both operate clinical laboratories, which test urine specimens on behalf of health care providers who prescribe medications for chronic pain patients.  (*See id.*; *see also id.* at ¶ 17.)  Since 2010, Ameritox and Millennium have been involved in a series of litigations throughout the country.   This case is the seventh lawsuit between the parties.   As shown below, Millennium's Complaint in this case is duplicative of claims and factual allegations asserted in

several of the earlier-filed actions.

***Ameritox v. Millennium*, No. 8-11-cv-00775-SCB-TPM (M.D. Fla.) ("Florida Litigation")**

On April 8, 2011, Ameritox sued Millennium in the United States District Court for the Middle District of Florida for Millennium's unfair business practices, including its use of illegal inducements, kickbacks, and other financial incentives to gain referrals from health care providers. (*See* Ex. A, Ameritox's Compl., at ¶¶ 1-53; *see also* Ex. B, Ameritox's Third Am. Compl., at ¶¶ 1-209.)

On September 19, 2011, Millennium filed its answer and counterclaims, identifying the following unfair and deceptive business practices:

- Ameritox allegedly provides kickbacks to health care providers by providing on-site personnel ("specimen collectors");
- Ameritox allegedly provides kickbacks to health care providers by leasing space in physician offices ("sham leases");
- Ameritox allegedly performs additional testing by utilizing an order form and test panels that encourages overutilization and extra expenditure;
- Ameritox allegedly encourages medically unnecessary testing;
- Ameritox allegedly falsely implies whether patients are "in-network" for insurance coverage and purportedly encourages testing based on a patient's level of insurance coverage;
- Ameritox allegedly provides inducements to health care providers such as gift cards, payment for office parties and free computers;
- Ameritox allegedly provides health care providers with point-of-care testing cups for free or below fair market; and
- Ameritox allegedly provides inducements to health care providers such as gift cards, payment for office parties and free computers.

(Ex. C, Millennium's Countercls., at ¶¶ 3-7, 18-29, 31-32, 34, 37, 42, 63-64, 70-71, 78, 81, 87.)

Additionally, Millennium pled numerous allegations about a previous civil investigation the United States Department of Justice and the Office of Inspector General ("OIG") for the United States Department of Health and Human Services conducted regarding Ameritox and the settlement of the investigation in which Ameritox agreed to pay $16.3 million to the government and enter into a Corporate Integrity Agreement ("CIA"). (*See id.* at ¶¶ 2, 15-17.)   Millennium

asserted allegations that despite the CIA, Ameritox continued to violate anti-kickback and Stark laws based on, *inter alia*, Ameritox's alleged use of specimen processors, space lease agreements, provision of point-of-care testing cups for free or below market value, and providing gift cards to physician employees or sponsoring office parties (*See id*. at ¶¶ 3-7, 18-29, 31-32, 34, 37, 63-64, 70-71, 78, 81, 87)

Millennium also asserted claims regarding an April 2011 "Dear Doctor" letter ("Dear Doctor Letter") from Ameritox's former Chief Executive Officer ("CEO") Ancelmo Lopes, which discussed a *qui tam* action filed against Millennium.  (*See id.* at ¶ 38; *see also id.* at Ex. 2, Dear Doctor Letter.)   Millennium claimed that Ameritox misstated the facts of the *qui tam* action, and "confused customers by portraying Ameritox as a more law-abiding and ethical company compared to Millennium."  (*See id.* at ¶¶ 38-39, 64, 71, 81.)  Millennium alleged violations of state and federal false advertising laws, deceptive trade practices, and unfair competition and tortious interference under Florida law.  (Dkt. 1 at ¶¶ 54-94.)

On August 29, 2012, Millennium filed its first amended counterclaims.  (Ex. D, Millennium's First Am. Countercls.)  Millennium dropped its allegations regarding the Dear Doctor Letter.  (*See id.*)  Millennium restated and expanded its claims regarding Ameritox's allegedly illegal kickbacks and deceptive business practices, adding new counts (based on the same factual allegations) for deceptive trade practices, unfair competition, and tortious interference in California, New York, Tennessee, Texas, Washington, and Oregon. (*See id.* at ¶¶ ¶¶ 2, 4-5, 19-59, 63-64, 71-120.)   Millennium repeated its allegations concerning the CIA.  (*See id.*at ¶¶ 3, 5, 15-17.)

On February 21, 2013, long after the deadline to amend the pleadings expired, Millennium moved for leave to file its proposed second amended counterclaims and to assert

several new allegations and claims.  (*See* Ex. E, Millennium's Motion for Leave; *see also* Ex. F, Millennium's Proposed Second Am. Countercls.; Ex. G, April 18, 2013 Court Order ("April Order"), at 1.)  First, Millennium moved to expand its claim regarding Ameritox's allegedly illegal kickbacks and deceptive business practices, and add claims based on the Unfair Competition Law statutes and/or common law of the following states:  Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New Mexico, Nevada, North Carolina, South Carolina and Washington.  (*See* Ex. F at ¶¶ 117-216.)  In moving for leave, Millennium admitted the proposed claims were based on the very same conduct and factual allegations already raised in Millennium's earlier pleadings.  (*See* Ex. E at 9-10, 20.)

Second, Millennium sought to re-assert allegations regarding the Dear Doctor Letter.  (*See* Ex. F at ¶ 28.)  Third, Millennium sought to assert allegations regarding Ameritox allegedly funding two lawsuits filed by former Millennium employees, Kelly Nelson ("Nelson") and Jodie Strain (Strain") for wrongful termination and retaliation for their refusal to participate in Millennium's illegal business practices.  (*See id.* at ¶ 20; *see also* Ex. H, Nelson's Compl.; Ex. I, Strain's Compl.)

Fourth, Millennium sought to assert allegations regarding Ameritox allegedly encouraging a pending federal criminal investigation of Millennium by the United States Attorney's Office for the District of Massachusetts ("Federal Criminal Investigation").  (*See id.* at ¶¶ 6, 19-20.)  The fact of the Federal Criminal Investigation is no secret.  The Federal Criminal Investigation and Millennium's illegal business practices are described in a November 16, 2012 Reuters article ("Reuters Article") titled "Exclusive: U.S. drug testing firm probed for

alleged fraud, intimidation." (Ex. K, Reuters Article.[1])  The Reuters Article provides in pertinent

part:

> "A federal grand jury in Boston is investigating Millennium Laboratories of San Diego, a fast-growing private company selling urine drug testing services to pain clinics across the United States. The company is not only under investigation by the Justice Department for allegations of health care fraud but also for intimidating former employees, one who was portrayed in a slideshow at a company meeting as a corpse in a body bag."

(*Id.*)  The Reuters Article further explains how Millennium "aggressive[ly] pitches to pain clinics

to order varieties of urine tests even when they were not needed, at up to $1,600 a test" and

explains to physicians how to boost their income because "a $15 payment to test for one drug

could balloon to about $800,000 a year if 20 people a day were tested and each urine sample was

tested for 11 drugs."  (*Id.*)  Furthermore, Millennium's former regional sales manager, Nelson,

testified to the grand jury that "Millennium gave doctors free boxes of collection cups with

embedded test strips --worth $3 to $6 per cup - to encourage referrals, which the prosecutor

questioned under an anti-kickback measure called the Stark Law."  (*Id.*)

Fifth, Millennium sought to assert allegations regarding Ameritox allegedly encouraging

or financing the publicity of the Federal Criminal Investigation through publicist Gregory

Howard ("Howard") of Conover & Company Communications, Inc. ("Conover"), including

Howard's efforts to arrange for a Reuters reporter to interview Nelson, and Ameritox allegedly

"orchestrat[ing] the writing and publication of the Reuters article."  (*See* Ex. F at ¶¶ 6, 19-21; *see

also id.* at Ex. 3, Email Correspondence.)

Sixth, Millennium sought to assert claims based on Ameritox employee and sales

representative, Brian Ward ("Ward"), allegedly distributing to a Millennium customer in Iowa a

---

[1] Millennium specifically mentions the November 16, 2012 Reuters Article in its Complaint but does not attach a copy to its Complaint.  (*See* Dkt. 1 at ¶¶ 3, 25-27.)

copy of the Reuters Article along with an alleged type-written document that mentions the Federal Criminal Investigation, summarizes the November 16, 2012 Reuters Article, and opines that "giving away free or discounted POCT devices is a violation of federal Stark and anti-kickback laws . . . ." (*Id.* at ¶¶ 23-25; *see also id.* at Ex. 4, the alleged type-written document.) Millennium, however, did not dispute the accuracy of the Reuters Article.  (*See id.* at ¶¶ 1-216.)

On April 18, 2013, the Middle District of Florida denied Millennium's motion for leave to amend as untimely and without good cause:   "Accordingly, the Court concludes that [Millennium] has not shown good cause for its motion to amend, nor has it shown that it did not unduly delay in discovering the information that supports the amendments and/or unduly delay in filing the motion to amend."  (Ex. G at 2.)   Millennium did not seek reconsideration or appeal the April Order.

***Millennium v. Ward*, No. CI13-335 (Sarpy County, Nebraska) ("Nebraska Litigation")**

Six days after Millennium moved for leave to file its proposed second amended counterclaims in the Florida Litigation, on February 27, 2013, Millennium, and its sales representatives Amos Burdine and Jackson Benefield, filed a complaint against Ameritox employee and sales representative, Ward, in Nebraska state court.  (*See* Ex. L, Nebraska Compl.; *see also id.* at ¶ 10.)  The Nebraska Complaint sets forth precisely the same set of operative facts as Millennium's untimely second amended counterclaims in the Florida Litigation, *i.e.*, that Ward allegedly distributed to a Millennium customer in Iowa a copy of the Reuters Article along with an alleged type-written document that summarizes the Reuters Article.  (*Id.* at ¶¶ 2-3, 20; *compare id.* at ¶¶ 2-3, 20 *with* Ex. F at ¶¶ 23-25.)  While Millennium did not name Ameritox as a defendant, the Nebraska Complaint is directed towards Ameritox as it is replete with allegations against Ameritox's business, the quality of its services, other litigations and investigations in

which Ameritox has been involved, including Ameritox's settlement of the previous civil investigation for $16.3 million and the CIA, and Ameritox allegedly facilitating the Federal Criminal Investigation of Millennium and the publication of the Reuters Article. (*See* Ex. L at ¶¶ 1-2, 5, 16-18, 26, 30.)   Again, Millennium did not dispute the accuracy of the Reuters Article. (*See id.* at ¶¶ 1-40.)

Based on these allegations, Millennium asserted against Ward claims for tortious interference, deceptive trade practices, libel, and slander under Nebraska law. (*See id.* at ¶¶ 23-40.)  On May 30, 2013, Ward moved to dismiss the Nebraska Complaint, and his motion is still pending. (*See* Ex. M, Ward's Mot. to Dismiss; *see also* Ex. N, Nebraska Litigation July 29, 2013 Docket Entry).

### *Millennium v. Ameritox*, No. 12CV1002 CAB NLS (S.D. Cal.) ("California Litigation")

On April 23, 2012, Millennium sued Ameritox in the United States District Court for the Southern District of California concerning an Ameritox press release titled, "Ameritox Counters Competitor's Misleading Statements." (*See* Dkt. 1 at Ex. 5 ("April 2012 Press Release"); *see also* Ex. O, Millennium's California Compl.)  Ameritox issued the April 2012 Press Release to address misleading statements made by a competitor concerning Ameritox's business practices, to explain the examination of Ameritox's use of specimen processors under the CIA, and to make clear that Ameritox does not provide free POCT Cups because "[p]roviding gratis or reduced-cost POC cups for physicians to perform billable testing is a questionable practice that Ameritox believes is a violation of anti-kickback laws . . . ." (Dkt. 1 at Ex. 5.)  Millennium asserted, through the California Complaint, that the April 2012 Press Release:

- allegedly conveys the false message that Millennium encourages and performs confirmation of negative test results, when Ameritox does not;
- allegedly implies that Ameritox, unlike Millennium, does not invest in political campaigns or legislative efforts;

- allegedly implies that Ameritox voluntarily worked with OIG to establish a superior compliance program, when Ameritox developed its compliance program under the CIA;
- allegedly conveys the false message that Ameritox does not provide point-of-care testing cups for free or below market value.

(*See* Ex. O at ¶¶ 16-23.)  The California Complaint is replete with allegations against Ameritox's business, the quality of its services, other litigations and investigations in which Ameritox has been involved, including Ameritox's settlement of the previous civil investigation for $16.3 million and the CIA.  (*See id.* at ¶¶ 11-13, 20, 24.)

Millennium claimed violations of state and federal false advertising laws, trade libel, and unfair competition under California law.  (*See id.* at ¶¶ 26-49.)  On June 22, 2012, Ameritox moved to dismiss Millennium's California Complaint for failure to state a claim.  (*See* Ex. P, Ameritox's Mem. in Supp. of Mot. to Dismiss.)  Without responding to Ameritox's motion to dismiss, on August 31, 2012, Millennium voluntarily dismissed its Complaint.  (*See* Ex. Q, Plf.'s Notice of Voluntary Dismissal of Entire Action Without Prejudice.)

***Millennium v. Ameritox,*** **Case No. 1:13-cv-11727 (D. Mass.) ("Boston Litigation")**

Millennium has again duplicated, and even triplicated, the Florida Litigation, the Nebraska Litigation, and the California Litigation with its July 17, 2013 Complaint against Ameritox in this Court.  (*See* Dkt. 1.)  First, Millennium re-pleads numerous allegations against Ameritox regarding the previous civil investigation of Ameritox, the $16.3 million settlement, and the CIA.  (*See id.* at ¶¶ 4-7, 28, 35, 39-40.)  Second, Millennium re-asserts its allegations from the Florida Litigation that despite the CIA Ameritox continues to violate anti-kickback and Stark laws based on Ameritox's alleged use of specimen processors at no cost to the physician; alleged "space lease" agreements; alleged provision of free or below market value POCT Cups to customers; alleged additional testing by utilizing an order form and test panels; alleged

encouragement of medically unnecessary testing; alleged implication that patients are "in-network" for insurance coverage and encouraging testing based on a patient's insurance coverage; and alleged provision of gift cards and office parties. (*See id.* at ¶¶ 5, 7, 44-69, 77-86, 89-101, 117, 123, 130, 137, 144, 151, 158, 165, 172, 180, 185, 192.)

Third, Millennium resurrects its previously withdrawn claims regarding the April 2011 "Dear Doctor" letter and the April 2012 Press Release. (*See id.* at ¶¶ 31-35, 37.) Fourth, Millennium asserts for the second time claims based on Ameritox allegedly funding the litigations of Millennium's former employees, including Nelson and Strain, against Millennium. (*See id.* at ¶¶ 3, 23-25.) Fifth, Millennium asserts for the third time claims based on Ameritox allegedly facilitating the Federal Criminal Investigation of Millennium and encouraging and financing the publicity of the Federal Criminal Investigation and the publication of the Reuters Article through Howard and Conover. (*See id.* at ¶¶ 3, 25-26, 28.) Sixth, Millennium repeats claims based on Ward in November 2012 allegedly distributing to a Millennium customer in Iowa the Reuters Article along with the alleged type-written document. (*See id.* at ¶¶ 26-28, 39-40; *see also id.* at Ex. 3.)

Based on these recycled allegations, Millennium now asserts claims against Ameritox for alleged violation of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, common law tortious interference with business relationship, and the consumer protection or unfair or deceptive trade practices acts of Massachusetts, Connecticut, Delaware, Maine, New Hampshire, New Mexico, Nevada, North Carolina, Ohio, and South Carolina. (*See id.* at ¶¶ 107-197.) Ameritox respectfully moves to dismiss these claims.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Guest-Tek Interactive*

*Entm't v. Pullen*, 665 F. Supp. 2d 42, 44 (D. Mass. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a court draws all reasonable inferences in plaintiff's favor, it "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 237 (D. Mass. 2011).  Affirmative defenses, such as claim preclusion, are considered when raised in a motion to dismiss pursuant to FED. R. CIV. P. 12(b).  *See Laverty v. Massad*, 661 F. Supp. 2d 55, 62 (D. Mass. 2009).  On a motion to dismiss, the Court can go beyond the complaint and also consider "matters susceptible to judicial notice and matters of public record," such as pleadings in other matters.  *Mortimer Off Shore Servs., Inc. v. Fed. Republic of Germany*, No. 10-cv-11551-RWZ, 2012 WL 1067648, at *1 (D. Mass. Mar. 28, 2012) (Zobel, J.).

## IV.   ARGUMENT

### A.   Millennium's Recycled State Law Claims Are Barred by the Rule Against Claim Splitting.

Millennium's Complaint is a text book example of impermissible claim splitting.  "The rule against claim splitting prohibits a party from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action."  *Fernandes v. Quarry Hills Assocs., L.P.*, No. 09-cv-11912, 2010 WL 5439785, at *10 (D. Mass. Dec. 28, 2010) (internal quotation and citation omitted); *see also Kale v. Combined, Inc.*, 924 F.2d 1161, 1166 (1st Cir. 1991) ("[T]he law prevents a litigant from claim-splitting [by] requiring that he assert all his various legal theories and factually related allegations the first time he brings suit.") (internal quotation and citation omitted).  Millennium asserts, through Counts II-XIII, that Ameritox engages in unfair and deceptive business practices, which violate the laws of several states.  Millennium's claims arise from the same factual allegations, and subject matter, already part of the Florida Litigation:  unlawful kickbacks to physicians, and medically unnecessary

testing.   In fact, Counts II-XIII of Millennium's Complaint are carbon copies of the proposed second amended counterclaims filed by Millennium in the Florida Litigation, which the Florida Court rejected as untimely.   (*See* Ex. G at 2.)   The rule against claim splitting applies with special force to a situation where, as here, a dissatisfied litigant files a second lawsuit in an attempt to avoid an adverse ruling in a pending case.

**1.      There Is No Basis to Permit Millennium to Pursue Simultaneous Federal Actions for the Same Alleged Wrong.**

As this Court has explained, "if a claim is both transactionally related to one which is the subject of pending lawsuit and was in existence at the time the first lawsuit was filed," then the rule against claim splitting applies.   *Fernandes,* 2010 WL 5439785 at *10 (citations omitted).   In the context of a claim splitting analysis, the term "at the time the first lawsuit was filed" means the filing of the last pleading of record in the first case (*i.e.,* first amended complaint) as opposed to the original filing.   *See Leonard v. Stemtech Int'l, Inc.*, No. 12-86, 2012 WL 3655512, at *8 (D. Del. Aug. 24, 2012); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (conducting claims splitting analysis from the date of the first amended complaint).   The relevant date for this Court's analysis is August 29, 2012 -- the date when Millennium filed its first amended counterclaims in the Florida Litigation, which is the operative pleading.   Put otherwise, the rule against claim splitting bars Millennium from litigating issues in this Court that 1) *arose before* Millennium filed its first amended counterclaims in the Florida Litigation on August 29, 2012, 2) are *transactionally related* to the subject matter of the Florida Litigation, and 3) *could have* been asserted in the prior pending action.   *See Johnson v. SCA Disposal Servs. of New England, Inc.*, 931 F.2d 970, 976 n.20 (1st Cir. 1990) ("a party's *actual knowledge* of a potential claim is not necessary for claim preclusion purposes") (emphasis in original).

While "a set of facts may give rise to multiple counts based on different legal theories, if

the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action." *Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576, 583-84 (1st Cir. 1995).  This approach "does not focus on the labels or sources for the plaintiff's causes of action but instead considers whether the underlying factual bases for the causes are related in time, space, origin or motivation." *Silva v. City of New Bedford*, 660 F.3d 76, 79 (1st Cir. 2011).  A cursory side-by-side comparison of Millennium's Complaint in the instant action, and its claims against Ameritox in the Florida Litigation, shows that both suits covers the exact same subject matter and "that [the] factual bases for the causes are related in time, space, origin or motivation," *Silva*, 660 F.3d at 79, which warrants dismissal on claim splitting grounds:

- Ameritox Allegedly Provided Kickbacks to Health-Care Providers by Providing On-site Personnel (Specimen Collectors).

| FL Counterclaims 9/19/11 | 1st Amended FL Counterclaims 8/29/12 | Current Complaint 7/17/13 |
|---|---|---|
| ¶¶ 3-7,18-24, 32, 63, 70, 78, 81, 87 | ¶¶ 2, 5, 32-45, 54, 73, 81, 90, 96, 103, 109, 115 | ¶¶ 5, 7, 44-53, 117, 123, 130, 137, 144, 151, 158, 165, 172, 180, 185, 192 |

- Ameritox Allegedly Provided Kickbacks to Health-Care Providers by Leasing Space in Physician Offices.

| FL Counterclaims 9/19/11 | 1st Amended FL Counterclaims 8/29/12 | Current Complaint 7/17/13 |
|---|---|---|
| ¶¶ 4, 5, 25-29, 31, 63, 70, 81, 87 | ¶¶ 5, 46-55, 73, 81, 90, 96, 109, 115 | ¶¶ 5, 54-60, 117, 123, 130, 137, 144, 151, 158, 165, 172, 180, 185, 192 |

- Ameritox Allegedly Furnished Health-Care Providers Free or Below Fair Market Value Point of Care Testing Cups.

| FL Counterclaims 9/19/11 | 1st Amended FL Counterclaims 8/29/12 | Current Complaint 7/17/13 |
|---|---|---|
| ¶¶ 6, 34, 64, 71, 81 | ¶¶ 2, 5, 56-59, 74, 82, 89, 97, 104, 109, 115 | ¶¶ 5, 7, 61-66, 117, 123, 144, 151, 165, 180, 185, 192 |

- Ameritox Allegedly Performs Additional Testing By Utilizing an Order Form and Test Panels That Encourages Overutilization and Extra Expenditure.

| FL Counterclaims 9/19/11 | 1st Amended FL Counterclaims 8/29/12 | Current Complaint 7/17/13 |
|---|---|---|
| ¶¶ 6, 42 | ¶¶ 5, 31 | ¶¶ 89-95, 117, 123, 130, 137, 144, 151, 158, 165, 172, 180, 185 |

- Ameritox Allegedly Encourages Medically Unnecessary Testing.

| FL Counterclaims 9/19/11 | 1st Amended FL Counterclaims 8/29/12 | Current Complaint 7/17/13 |
|---|---|---|
| ¶¶ 42, 64, 71, 81 | ¶¶ 19-30, 74, 82, 97, 104, 109 | ¶¶ 5, 77-80, 117, 123, 130, 137, 114, 151, 158, 165, 172, 180, 185, 192 |

- Ameritox Allegedly Falsely Implies Whether Patients are "In-Network" For Insurance Coverage and Purportedly Encourages Testing Based on a Patient's Level of Insurance Coverage

| FL Counterclaims 9/19/11 | 1st Amended FL Counterclaims 8/29/12 | Current Complaint 7/17/13 |
|---|---|---|
| | ¶¶ 4, 31,42-44, 63-64, 96 | ¶¶ 5, 63-64, 81-86, 96-101, 117, 123, 130, 137, 144, 151, 158, 165, 172, 180, 185 |

- Ameritox Allegedly Provides Inducements To Health-Care Providers Such as Gift Cards, Payment for Parties and Free Computers

| FL Counterclaims 9/19/11 | 1st Amended FL Counterclaims 8/29/12 | Current Complaint 7/17/13 |
|---|---|---|
| ¶¶ 6, 37, 64, 71, 81 | ¶¶ 2, 5, 60-62, 74, 82, 89-90, 97, 104, 109, 115 | ¶¶ 5, 67-69, 117, 123, 144, 151, 165, 180, 185, 192 |

Millennium cannot credibly argue its claims in the instant action are somehow different than those at issue in the Florida Litigation.[2]  Aside from being plainly evident from the face of the pleadings (as shown above), this case involves the exact same claims Millennium was denied leave to amend in the Florida Litigation.  In attempting to get the Florida Court to grant it leave to amend in that case, Millennium openly admitted the claims "are based on the same types of conduct [already asserted in the lawsuit] on a broader scale."  (Ex. E at 20.)

Millennium was required to assert **_all related state laws claims_** based on Ameritox's purported illegal inducements and kickbacks in the Florida Litigation, which would have been heard if Millennium has timely raised them.  *See Kale*, 924 F.2d at 1165 ("when a plaintiff

---

[2] Millennium's Complaint includes "new" allegations that Ameritox "distribut[ed] false and misleading information about the Massachusetts [Criminal] Investigation and about its own compliance program and business practice to physicians."  (Dkt. 1 at ¶¶ 3-4, 25-28, 30.)  As discussed in Section B, these claims are likewise barred under the rule against claim splitting and/or they are not viable causes of action.  Additionally, Millennium's Complaint adds a claims for unfair competition under Ohio law.  (*See id.* at ¶¶ 170-177.)  But, this claim arises from the same nucleus of facts and could have been asserted in the Florida Litigation.

pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists.")  Despite motive and opportunity, Millennium failed to do so.

### 2. Millennium Filed its Complaint to Circumvent the Florida Court's April Order Denying Leave to Amend

Counts II-XIII of Millennium's Complaint are simply re-treads of the same unfounded allegations that Ameritox provides illegal inducements and kickbacks to gain referrals from health care providers in violation of unfair competition and deceptive trade practices statutes in various states.   Millennium filed an untimely motion to add the exact same claims to the Florida Litigation, but lost.   A litigant, such as Millennium, cannot file a new lawsuit to "end-run" an order denying leave to amend in an earlier suit.  *See Silva v. City of New Bedford*, 677 F. Supp. 2d 367, 371-72 (D. Mass. 2009) ('It is impossible to read the complaints in the two subject suits and conclude that this case is anything other than an attempted end-run of the first court's denial of motion for leave to amend . . . Claim preclusion and res judicata exist to prevent such maneuvering.''); *see also Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 212 (D.D.C. 2011) (finding plaintiff to have engaged in claim splitting and dismissing second action, in part because the claims in second suit "mirror[ed]" the substance of plaintiff's proposed amended complaint in first suit, which had been denied by district court); *Sensormatic*, 329 F. Supp. 2d at 579 ("the doctrine of claim splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those claims.")

As one court explained, allowing litigants to file a new lawsuit every time a motion to amend is denied advocates flagrant judge-shopping and leads to impermissible judicial oversight:

> . . . to allow the approach plaintiffs advocate would grant this court's seal of approval to a practice of flagrant judge-shopping. . . . the court cannot condone plaintiffs' practice of running to a different city within the district and filing a new

case every time a judge in a prior action makes a ruling adverse to that litigant's position. The court cannot be made a party to what is in effect an appeal from Judge Crow's ruling in the 1985 action.

*Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988); *see also Fernandes,* 2010 WL 5439785, at *10 (citing *Oxbow* with approval).

By filing and serving this lawsuit, Millennium has forced Ameritox to incur the costs of responding, yet again, to claims that the Florida Court expressly refused to allow because they were deemed to be untimely. (*See* Ex. G at 2.)  While Millennium may be dissatisfied with the Florida Court's decision to prevent its tardy amendment of claims, it must live with its strategic choices.  *See Hatch v. Trail Kind Indus., Inc.*, 699 F.3d 38, 45 (1st Cir. 2012) (affirming dismissal of later filed action based on claim preclusion after denial of leave to amend in first action).  Millennium cannot file a second lawsuit to achieve procedural advantage by circumventing an order denying leave to amend.  *See Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996).  The proper (and only) procedural course is for Millennium to appeal or seek reconsideration of the April Order.  *See Johnson*, 931 F.2d at 976 ("It is widely accepted that appeal is the plaintiff's only recourse in such a situation.").

In sum, Millennium cannot pursue duplicate claims in this Court in violation of the rule against claim splitting, and in order to evade the effect of the April Order.  Counts II-XIII of Millennium's Complaint thus should be dismissed to the extent that are based on the same nucleus of operative facts underlying Millennium's  claims in the Florida Litigation.

**B.    Millennium's Remaining Claims Should Be Dismissed because Millennium Failed to State a Viable Claim.**

### 1.    Publicity of the Federal Criminal Investigation Is  Not Actionable.

Millennium alleges that Ameritox disseminated false and misleading representations about the Federal Criminal Investigation through the alleged distribution of the Reuters Article

and the alleged type-written document because "Ameritox *fails to disclose* its own encouragement of the investigation and the fact that it has been subject to extensive federal investigation and oversight due to its illegal activities."  (Dkt. 1 at ¶ 111 (emphasis added); *see also id.* at ¶¶ 3-4, 25-28, 30, 117, 123, 130, 137, 144, 151, 157, 165, 172, 180, 185, 192.) However, Millennium does not allege that any affirmative statement Ameritox allegedly made is false and misleading.  (*See id.*)

"A claim for false advertising in violation of Lanham Act § 43(a), 15 U.S.C.A. § 1125(a), requires an affirmative misrepresentation."  J. Thomas McCarthy, 5 MCCARTHY ON TRADEMARKS ("MCCARTHY"), at § 27:65 (4th ed.); *see also Register.com, Inc. v. Domain Registry of Am., Inc.*, No. 02 Civ. 6915(NRB), 2002 WL 31894625, at *14 (S.D.N.Y. Dec. 27, 2002) (same) (citation omitted); *Universal City Studios, Inc. v. Sony Corp.*, 429 F. Supp. 2d 407, 410 (C.D. Cal. 1977) (dismissing claims brought under the Lanham Act for failure to advise the public because "[t]he absence of any statement is neither 'false' nor a 'representation.'"). "Congress recognized this limitation on the scope of the Act and, in 1988, refused to make a change in the statute."  MCCARTHY at § 27:65; *see also* Senate Judiciary Comm. Report on S. 1883, S. Rep. No. 100-515, at 41 (Sept. 15, 1988).  "The few cases in which omissions have been found to make a statement untrue generally concern a negative comparison with a competitor's product that omits information that would weaken a superiority claim." *K & N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09-01900-VAP, 2011 WL 4387094, at *18 (C.D. Cal. Sept. 20, 2011) (on summary judgment, ruling that defendant was not entitled to bring a Lanham act claim based on plaintiff's omission of fact from product packaging); *but see Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 131-33 (D. Mass. 1996) (failure to disclose a material fact that users of defendant's dry shaver product "can expect a less irritating shave" only after an

acclimation period of at least twenty-one days was misleading).

Millennium failed to plead that Ameritox made any allegedly affirmative misrepresentation along with its alleged distribution of the Reuters Article and the type-written document, and its claims therefore should be dismissed. *See Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 286-87 (S.D.N.Y. 2007) (plaintiff failed to state a claim for false advertising under the Lanham Act because the "nondisclosure of an agreement" is not sufficient where the complaint does not allege the accompaniment of any false or misleading statement); *see also Register.com*, 2002 WL 31894625, at *14 (no Lanham Act violation where the defendant said "nothing about its refund policy at all").

## 2.   The April 2011 "Dear Doctor" Letter Is Not Actionable.

Millennium asserts that the April 2011 "Dear Doctor" Letter was false and misleading because "Ameritox ***failed to disclose*** the fact that Cunningham filed a nearly identical whistleblower complaint against it that the government was still investigating at the time it published and circulated the letter"; Ameritox "***omitted to state*** that the United States had declined to intervene in the action against Millennium after having had more than one year to investigate the complaint's allegations"; Ameritox "***never provided*** any corrective disclosure either after the United States subsequently stated for a second time that it was not intervening in the case against Millennium, or after the complaint was dismissed with prejudice";[3] and "[n]or

---

[3] Millennium incorrectly pleads that Cunningham's complaint was dismissed with prejudice. (Dkt. 1 at ¶ 33.)  While the complaint was originally dismissed with prejudice, on April 12, 2013, the First Circuit reversed the dismissal with prejudice of Aspect 2 of the FCA claim and remanded the case.  *See United States ex rel. Cunningham v. Millennium Laboratories, Inc.*, 713 F.3d 662, 675-76 (1st Cir. 2013).  Also, on July 16, 2013, the day before Millennium filed its complaint in this Court, the United States filed an appearance. (*See* Ex. J.)  In its zeal to re-plead the denied proposed second amended counterclaims from the Florida Litigation, Millennium forgot to update its allegations regarding this *qui tam* action to reflect its current status. (*See* Dkt. 1 at ¶ 33; *see also* Ex. F at ¶ 28.)

did Ameritox ***ever disclose*** the circumstances under which Cunningham and/or Calloway agreed to forego their claims against Ameritox and instead collaborate in separate litigation with Millennium." (Dkt. 1 at ¶¶ 32-33 (emphasis added).) Millennium's entire claim regarding the April 2011 "Dear Doctor" Letter thus is based on alleged omissions or failure to disclose facts. Millennium thus has failed to state a viable cause of action.

### 3.     The April 2012 Press Release Is Not Actionable.

Millennium next alleges that Ameritox, with its April 2012 Press Release, "mischaracterized its 'compliance program' by ***failing to disclose*** that this program was the direct result of its settlement with the federal government following an extensive investigation into its illegal business practices." (Dkt. 1 at ¶ 34 (emphasis added); *see also id.* at ¶¶ 112, 117, 123, 130, 137, 144, 151, 157, 165, 172, 180, 185, 192; *id.* at Ex. 5.) Millennium further challenges the following Ameritox statements: (1) "[Ameritox's] long-public national ethical standards and its best-in-class compliance program developed in consultation with the [OIG];" (2) "Ameritox works closely with independent and Federal agencies to review its customer support programs, in a review process that represents an industry best practice;" and (3) "Ameritox is the only pain medication monitoring company with a fully implemented, effective compliance program that meets all of the requirements of the [OIG]." (*Id.* at ¶ 35; *see also id.* at ¶ 112; *id.* at Ex. 5.) Millennium alleges "[t]hese statements are misleading because Ameritox ***fails to mention*** that its 'compliance program' is the direct result of its five-year CIA, which (as discussed below) it entered into to settle claims that it engaged in Medicare fraud by providing illegal kickbacks to customers." (*Id.* at ¶ 35 (emphasis added).) Again, Millennium's claim is wrongly based on omissions. (*See id.* at ¶¶ 34-35, 112.)

Moreover, Millennium has ignored the surrounding context of these statements.

Ameritox specifically states in the April 2012 Press Release that:

> [t]he current Ameritox management team was brought aboard post-2005 events, which led to a 2010 Corporate Integrity Agreement between the Office of Inspector General (OIG) of the US Department of Health and Human Services by Ameritox.   Under the Corporate Integrity Agreement, customer relationship programs are examined by an internal compliance committee, independent external reviewer and the Federal government.

(*Id.* at Ex. 5 at 1.)   The conclusion of the April 2012 Press Release also states that "the Company's client relationship programs are subject to independent audit and OIG review and Ameritox adheres to the highest standards of Federal and state policy."   (*Id.* at 2.)   When Ameritox's statements are read in context of the whole April 2012 Press Release, no reasonable customer would be misled because the alleged omissions that Millennium asserts are actually disclosed therein.   *See Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("[I]f the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may . . . be dismissed as a matter of law.").

Millennium also asserts that the following statements from the April 2012 Press Release are allegedly false and misleading:   (1)  "Ameritox, unlike a San Diego company, does not recommend customers retest negative drug samples much less make it a standing practice to retest all negative drug samples"; and (2) "[p]roviding gratis or reduced-cost POC cups for physicians to perform billable testing is a questionable practice that Ameritox believes is a violation of anti-kickback laws, therefore putting physician practices at risk."  (Dkt. 1 at ¶ 35.) As explained above, Millennium's allegations regarding these statements arise from the same nucleus of facts underlying Millennium's claims in the Florida Litigation.  Because Millennium acquired the April 2012 Press Release no later than April 23, 2012 -- the date Millennium filed the California Complaint -- it could have filed these claims as part of the Florida Litigation, but failed to do so.  Thus, these claims should be dismissed as improper claim splitting.

Finally, Millennium attacks the following statement from the April 2012 Press Release:

> Ameritox invests in science that advances patient pain-medication monitoring and not in political campaigns. . . . That said, its San Diego competitor supports state-government legislative efforts and funds those opinions with PAC resources.  In Florida alone, where pending key legislation benefits that company, it has targeted $20,000 in contributions.

(*Id.*)  Millennium alleges that "[t]his statement is false because it implies that Ameritox does not invest in political campaigns or legislative efforts" and that "Ameritox has retained one of the largest lobbying firms in Washington, D.C. to promote its legislative interests at a rate of $100,000 per quarter."  (*Id.*)  Even if Ameritox allegedly engages a Washington D.C. lobbyist to protect its legislative interests, Ameritox's statements taken as true do not singularly mean that Ameritox does not "invest[] in political campaigns."  Thus, Ameritox's statement cannot be literally false.  *See Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (for literal falsity to exist the message must be unambiguous).

Furthermore, Millennium has not alleged how the purchasing decisions of Millennium's customers would be influenced even if the statement "Ameritox invests in science that advances patient pain-medication monitoring and not in political campaigns" is arguably false.  (Dkt. 1 at ¶ 35); *see also William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995) (affirming judgment that Lanham Act claim failed because plaintiff could not show how the statement was likely to influence purchasing decisions of consumers).  Millennium thus has failed to state a claim under the Lanham Act for all of the identified statements, and the First Cause of Action should be dismissed in its entirety.

## V.    CONCLUSION

For the foregoing reasons, Ameritox respectfully asks this Court to dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

Ameritox, Ltd.
By their attorneys,

Dated:  September 3, 2013                    /s/ *Paul W. Shaw*

Paul W. Shaw (BBO# 455500)
Stacey L. Gorman (BBO# 655147)
K&L GATES LLP
State Street Financial Center
1 Lincoln Street
Boston, MA 02111
Paul.shaw@klgates.com
Stacey.gorman@klgates.com
617.261.3100

*Counsel for Defendant Ameritox, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I, Paul W. Shaw, certify that a true copy of the foregoing document, filed through the Court's ECF system, will be served upon the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 3rd day of September 2013.

<u>/s/ *Paul W. Shaw*            </u>
Paul W. Shaw