UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

– – – – – – – – – – – – – – – – – – – – – – – – – – – x

MILLENNIUM LABORATORIES, INC., :

|  |  |  |
|---|---|---|
| Plaintiff, | : | Civil Action |
|  |  | No. 13-11727-RWZ |
| v. | : | **<u>ORAL ARGUMENT REQUESTED</u>** |
| AMERITOX, LTD., | : |  |
| Defendant. | : |  |
|  | : |  |

– – – – – – – – – – – – – – – – – – – – – – – – – – – x

**MILLENNIUM LABORATORIES, INC.'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO AMERITOX'S RULE 12(B)(6) MOTION TO DISMISS</u>**

Dated:  Boston, Massachusetts
       October 18, 2013

James R. Carroll
Peter Simshauser
Christopher A. Lisy
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02018
(617) 573-4800
James.Carroll@skadden.com
Peter.Simshauser@skadden.com
Christopher.Lisy@skadden.com

*Counsel for Plaintiff
Millennium Laboratories, Inc.*

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

    A.    MILLENNIUM HAS NOT SPLIT ITS CLAIMS ...................................................1

    B.    MILLENNIUM HAS STATED A VIABLE LANHAM ACT CLAM ..................2

BACKGROUND AND PROCEDURAL HISTORY ......................................................3

    A.    MILLENNIUM'S CLAIMS ................................................................................3

    B.    THE FLORIDA LITIGATION
          – *Ameritox v. Millennium*, No. 8:11-cv-00775 (M.D. Fla.) ....................................3

    C.    THE MASSACHUSETTS LITIGATION
          – *Millennium v. Ameritox,* No. 1:13-cv-11727 (D. Mass.) ....................................5

ARGUMENT ...........................................................................................................................6

    I.    MILLENNIUM'S CLAIMS IN THIS ACTION CANNOT
        BE BARRED BY THE RULE AGAINST CLAIM-SPLITTING .........................6

        A.    As Ameritox Is Forced To Concede, A
            Number Of Millennium's Claims Arose After
            The First Amended Counterclaims Were Filed In
            Florida, And Therefore, Cannot As A Matter Of
            Law Be Subject To The Rule Against Claim-Splitting ..............................7

        B.    Even If This Court Were To Consider The
            Claim-Splitting Issue In Depth, Which It Need Not, There
            Can Be No Finding Of Impermissible Claim-Splitting In This Case ..........9

        C.    The Denial Of Millennium's Motion
            For Leave To Amend In Florida On
            Timeliness Grounds Cannot  Serve As A
            Basis To Bar Litigation Of The Claims In This Action ............................12

    II.    MILLENNIUM HAS STATED A VIABLE
        CLAIM FOR FALSE  AND MISLEADING
        ADVERTISING IN VIOLATION OF THE LANHAM ACT .............................15

        A.    Millennium Has Adequately Stated A
            Claim Based On Ameritox's Representations
            Relating To The Massachusetts Investigation ...........................................15

         B.    Millennium Has Stated A Claim Based
            On Ameritox's April 2012 Press Release ................................................17

III.    In The Unlikely Event That The Court Grants Any Portion
        Of Ameritox's Motion, Millennium Should Be Granted Leave to Amend............19

CONCLUSION...........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                          <u>PAGE(S)</u>

Alves v. Daly,
    12-10935-MLW, 2013 WL 1330010 (D. Mass. March 29, 2013) ...........................................20

Apparel Art International, Inc. v. Amertex Enterprises Ltd.,
    48 F.3d 576 (1st Cir. 1995) ................................................................................................10, 12

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ............................................................................................................6

Blackstone Realty LLC v. F.D.I.C.,
    244 F.3d 193 (1st Cir. 2001) ..............................................................................................6

Bosque v. Wells Fargo Bank, N.A.,
    762 F. Supp. 2d 342 (D. Mass. 2011) ................................................................................6

Cashmere & Camel Hair Manufacturers Inst.v. Saks Fifth Avenue,
    284 F.3d 302 (1st Cir. 2002) ..............................................................................................15

Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,
    228 F.3d 24 (1st Cir. 2000) ................................................................................6, 15, 18, 19

Curtis v. Citibank, N.A.,
    226 F.3d 133 (2d Cir. 2000)............................................................................................ passim

Dorsey v. Jacobson Holman PLLC,
    764 F. Supp. 2d 209 (D.D.C. 2011) ..................................................................................12

Foman v. Davis,
    371 U.S. 178, 83 S. Ct. 227 (1962)....................................................................................20

Friends of the Earth, Inc. v. Crown Central Petroleum Corp.,
    95 F.3d 358 (5th Cir. 1996) ...............................................................................................12

Gillette Co. v. Norelco Consumer Products Co.,
    946 F. Supp. 115 (D. Mass. 1996) ................................................................................2, 16, 17

Greenberg v. Bd. of Governors of the Fed. Reserve Sys.,
    968 F.2d 164 (2d Cir. 1992)...............................................................................................11

Haskell v. Time, Inc.,
    857 F. Supp. 1392 (E.D. Cal. 1994)...................................................................................18

Hatch v. Trail King Indus., Inc.,
    699 F.3d 38 (1st Cir. 2012)................................................................................................12

Hernandez v. Path, Inc.,
    No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ............................2, 8, 9

**CASES**            **PAGE(S)**

Hill v. United States,
  751 F. Supp. 909 (D. Colo. 1990) ................................................................................8

Hladky v. UCB Films, Inc.,
  No. 00-4062-RDR, 2001 WL 311193 (D. Kan. Feb. 6, 2001) .................................13

Integrated Techs. Ltd. v. Biochem Immunosystems, (U.S.) Inc.,
  2 F. Supp. 2d 97 (D. Mass. 1998) ....................................................................6, 13, 14

Johnson v. SCA Disposal Services of New England, Inc.,
  931 F.2d 970 (1st Cir. 1991) ...................................................................................12

K&N Engineering, Inc. v. Spectre Performance,
  No. EDCV 09-01900-UAP (DTBx), 2011 WL 4387094 (C.D. Cal. Sept. 20, 2011) ...............16

Kale v. Combined Insurance Co. of Am.,
  924 F.2d 1161 (1st Cir. 1991) ...................................................................................12

Kearns v. General Motors Corp.,
  94 F.3d 1553 (Fed. Cir. 1996)......................................................................................6

King v. Hoover Group, Inc.,
  958 F.2d 219 (8th Cir. 1992) .............................................................................13, 14

Leonard v. Stemtech International, Inc.,
  No. 12-86-LPS-CJB, 2012 WL 3655512 (D. Del. Aug. 24, 2012) ....................................10, 12

McDaniel v. Vilsack,
  No. 12-723(RWR), 2013 WL 2352187 (D.D.C. May 30, 2013)................................................8

McGrath & Co., LLC v. PCM Consulting, Inc.,
  No. 11-10930-DJC, 2012 WL 503629 (D. Mass. Feb. 15, 2012)............................................15

National Labor Relations Board v. United Technologies, Corp.,
  706 F.2d 1254 (2d Cir. 1983)..............................................................................11, 12

Noonan v. Wonderland Greyhound Park Realty LLC,
  723 F. Supp. 2d 298 (D. Mass. 2010) ......................................................................14

Oxbow Energy, Inc. v. Koch Indus., Inc.,
  686 F. Supp. 278 (D. Kan. 1988) ..............................................................................12

Prime Management Co. v. Steinegger,
  904 F.2d 811 (2d Cir. 1990)...............................................................................7, 10

Register.com, Inc. v. Domain Registry of Am., Inc.,
  No. 02 Civ. 6915(NRB), 2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002)................................16

**CASES**                                                                                            **PAGE(S)**

Rosa v. Park West Bank & Trust,
   214 F.3d 213 (1st Cir. 2000).......................................................................................9

Sec. & Exch. Comm'n v. First New Jersey Sec., Inc.,
   101 F.3d 1450 (2d Cir. 1996)...........................................................................8, 10, 11

Sensormatic Sec. Corp. v. Sensormatic Elects. Corp.,
   329 F. Supp. 2d 574 (D. Md. 2004) .....................................................................12

Sharp Kabushiki Kaisha v. Thinksharp Inc.,
   448 F.3d 1368 (Fed. Cir. 2006)..............................................................................6

Silva v. City of New Bedford,
   660 F.3d 76 (1st Cir. 2011)....................................................................................12

Silva v. City of New Bedford, Mass.,
   677 F. Supp. 2d 367 (D. Mass. 2009) ...................................................................12

Time Warner Cable, Inc. v. DirecTV, Inc.,
   497 F.3d 144 (2d Cir. 2007)...................................................................................18

Universal City Studios, Inc. v. Sony Corp. of Am.,
   429 F. Supp. 407 (C.D. Cal. 1977) .......................................................................16

Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.,
   516 F. Supp. 2d 270 (S.D.N.Y. 2007).....................................................................16

William H. Morris v. Group W, Inc.,
   66 F.3d 255 (9th Cir. 1995) ...................................................................................19

Williams v. Astra USA, Inc.,
   68 F. Supp. 2d 29 (D. Mass. 1999) .......................................................................20

**OTHER AUTHORITIES**                                                                                **PAGE(S)**

15 U.S.C. § 1125(a)(1)(B) ..............................................................................................15

15 U.S.C.A. § 1125(a) .....................................................................................................16

Cal. Bus. & Prof. Code § 17200. .....................................................................................9

Fed. R. Civ. P. 15(a)(2)....................................................................................................20

Fed. R. Civ. P. 12(b)(6)................................................................................................2, 6

Senate Judiciary Comm. Report on S. 1883, S. Rep. No. 100-515 (Sept. 15, 1988)....................16

J. Thomas McCarthy, 5 McCarthy on Trademarks (4th ed.) ........................................16

# INTRODUCTION[1]

Ameritox's objective in this litigation is simple:  to avoid at all costs being forced to answer for its misconduct in numerous states that is not already the subject of litigation.  Consistent with this objective, Ameritox has: (i) rebuffed <u>repeated</u> attempts by Millennium to hold a conference of the parties, as required under Rule 26; (ii) refused to respond to <u>any</u> requests for discovery; and (iii) now seeks dismissal of the claims in this action on grounds that are plainly at odds with controlling law.[2] The rule against claim-splitting, Ameritox's primary ground for dismissal, prevents parties from litigating the <u>same</u> issues simultaneously in multiple fora.  It cannot prevent litigation of an issue for the first time, as Ameritox advocates in its Motion.  Likewise, the Lanham Act prevents parties from making false and misleading statements in advertising.  Contrary to Ameritox's suggestion that the terms of the Lanham Act be restricted only to address affirmative misstatements, the law is clear that Ameritox's rampant practice of misleading health care providers through half-truths and by refusing to disclose material information is also actionable.  Ameritox's Motion is accordingly without merit and should be denied in its entirety.  In the event that the Court grants Ameritox's Motion as to any of Millennium's claims, which it should not, Millennium should be given leave to amend those claims.

## A.    <u>MILLENNIUM HAS NOT SPLIT ITS CLAIMS</u>

Ameritox's argument that the claims in this matter are already the subject of litigation pending between the parties in Florida (the "Florida Litigation"), and therefore, are barred by the rule against claim-splitting, is fatally flawed as a matter of both fact and law.  The rule prevents parties from asserting the <u>same</u> claims in multiple actions, but Millennium has not attempted to do so.  It is well-established that the rule does <u>not</u> apply where, as here, claims arise after the date of the operative pleading in the other pending litigation, or where the claims do not arise out of the same nucleus of

---

[1]    Unless otherwise noted, all citations and internal alterations and quotations are omitted and all emphasis is added.

[2]    The discovery issues are the subject of Millennium's pending motion to compel.  (ECF No. 18.)

operative facts.  As even Ameritox concedes, and as detailed in the Complaint, Ameritox's deceptive

statements about the investigation by the United States Attorney's Office of Massachusetts

("Massachusetts Investigation") were made in November 2012, after Millennium filed its counterclaims

in Florida in August 2012.  Likewise, Millennium's Complaint attacks Ameritox's practices with respect

to pharmacogenetic testing, which began in April 2013.  (Id. ¶¶ 20, 70-76.)  These aspects of the

Complaint, which are incorporated in Counts II – XIII, are immune to attack on claim-splitting grounds,

thereby necessitating a denial of Ameritox's entire Motion.  See Hernandez v. Path, Inc., No. 12-CV-

01515 YGR, 2012 WL 5194120, at *6, n.7 (N.D. Cal. Oct. 19, 2012) ("Federal Rule of Civil Procedure

12(b)(6) is not an appropriate device to eliminate a portion of a claim").

Even if the Court were to consider Ameritox's claim-splitting arguments with respect to

Millennium's allegations about Ameritox's additional illicit practices, which it need not, the rule against

claim-splitting does not apply.  As set forth in the charts attached as Exhibit 1 and 2, the issues in this

action and those in Florida are separate and distinct, as they involve Ameritox's wrongful conduct in

different states, under different state laws, involving different Ameritox sales personnel and health care

providers as well as different evidence.  Put simply, Millennium has never litigated the issues in this

case in Florida.  Thus, as a matter of law, there can be no finding of impermissible claim-splitting.

## B.    MILLENNIUM HAS STATED A VIABLE LANHAM ACT CLAM

Ameritox attacks Millennium's Lanham Act claim for false and deceptive advertising on the

ground that only affirmative misstatements supposedly can be actionable, and therefore, Ameritox's

false and misleading statements that omit material facts are not actionable.  (Ameritox's Mem. In

Support Of Mot. To Dismiss, ECF No. 14 at 15-16.)  This misstates the law.  Statements that are made

misleading by the failure to disclose material facts plainly violate the Lanham Act.  See Gillette Co. v.

Norelco Consumer Prods. Co., 946 F. Supp. 115, 131 (D. Mass. 1996).  Millennium has unquestionably

satisfied its obligations at the pleading stage by identifying a host of false and misleading affirmative

statements by Ameritox, as well as statements that are misleading and deceptive by virtue of Ameritox's omission of material facts. (Compl., ECF No. 1 at ¶¶ 21-38, 109-113.) In addition to identifying the particular statements, Millennium also details how the statements are false and misleading. (Id.) Nothing more is required at this pleading stage.

## BACKGROUND AND PROCEDURAL HISTORY

### A. MILLENNIUM'S CLAIMS

Unable to compete with Millennium through legitimate means, Ameritox has resorted to a variety of underhanded, unlawful tactics to damage Millennium and grasp at its customers. These include funding litigation between Millennium and its former employees to generate negative publicity about it, publicizing false and misleading information about the Massachusetts Investigation (an investigation that Ameritox actively encouraged), disseminating false and misleading information about Millennium's practices and its own to customers, paying illegal incentives and kickbacks to health care providers, and encouraging medically unnecessary testing. (Compl. ¶¶ 2-5.) As Millennium has recently been able to establish, this panoply of illicit conduct has a far greater geographic reach than previously thought, extending to such states as Massachusetts, Connecticut, Delaware, Maine, Michigan, New Hampshire, New Mexico, Nevada, North Carolina, Ohio, and South Carolina. (Id. ¶ 9.)

### B. THE FLORIDA LITIGATION – *Ameritox v. Millennium*, No. 8:11-cv-00775 (M.D. Fla.)

Ameritox initiated the Florida Litigation by suing Millennium on April 8, 2011 for three kinds of alleged unfair competition. (Mem. at Ex. A.) The court set September 16, 2011 as the deadline for amended pleadings. (Id. at Ex. G.) When Millennium's investigation revealed unlawful conduct by Ameritox in several states, Millennium asserted counterclaims against Ameritox on September 19, 2011. (Id. at Ex. C.) Following two more amendments of Ameritox's complaint, Millennium filed an amended answer and counterclaims on August 29, 2012. (Id. at Ex. D.) In early 2013, after changing counsel, Millennium discovered additional wrongful conduct by Ameritox. Ameritox refused to allow

Millennium to amend its counterclaims, so Millennium sought leave of court to amend on February 21, 2013, 10 months before the close of discovery and 16 months before the trial set for June 2014.  (Id. at Ex. E.)  The Florida court denied the motion to amend, finding that Millennium had not established "good cause" to justify amendment after the September 16, 2011 deadline set by the court had passed.  (Id. at Ex. G.)  The court did not address the merits of the proposed counterclaims or whether Millennium could assert those claims in a separate litigation.  (Id.)

In the Florida Litigation, Millennium's operative claims against Ameritox are:  (1) violations of the deceptive trade practices and consumer protection statutes of Florida, California, Texas, and New York; (2) common law unfair competition based on conduct in Florida, Texas, and Washington; and (3) tortious interference with business relationships based on conduct in Florida, California, Texas, Tennessee, New York, Washington, and Oregon.  In contrast to this action, there are no claims brought by Millennium in Florida under the Lanham Act and none of Ameritox's conduct in the states at issue in Florida is before the Court here.

The claims in Florida are based on Ameritox providing unlawful inducements to health care providers, billing and collecting payment for medically unnecessary testing, and arranging for the sale of non-Ameritox products to accounts at favorable prices in exchange for more referrals in the particular states identified.  (See e.g. Mem. at Ex. D at ¶¶ 66, 72-74, 96-97.)  The factual allegations underpinning these claims include state-specific policies, such as the training of sales representatives in California to discourage testing for Medicaid and Medi-Cal patients (id. ¶ 25), and also encompass actions occurring on a practice-by-practice, doctor-by-doctor level as individual health care practices received varying combinations of illegal incentives from Ameritox and its sales representatives.  (Id. ¶¶ 56-62.)[3]

---

[3]    Ameritox discusses two other actions that it calls the "Nebraska Litigation" and the "California Litigation."  (Mem. at 6-7.)  However, Ameritox does not contend that res judicata or claim-splitting bar any of the present claims due to these two actions.  As Ameritox notes in its motion, the California Litigation has been dismissed without prejudice and thus is neither another pending action nor a final judgment on the merits.  (Id. at 7.)  The Nebraska Litigation, in which Ameritox was not even a party, targeted only the false and misleading statements made by a single Ameritox sales representative in

(cont'd)

**C.      THE MASSACHUSETTS LITIGATION –**
         ___*Millennium v. Ameritox*, No. 1:13-cv-11727 (D. Mass.)___

        Ameritox's assertion of claim-splitting is particularly disingenuous here because -- as it knows --

Millennium sought to assert certain of these claims in Florida, but was denied leave to amend both by

Ameritox (for apparent strategic reasons) and by the Court on timeliness grounds.  Having pursued a

course that would promote judicial efficiency and conserve party resources, yet still believing that

Ameritox should be held responsible for its newly-discovered illegal conduct, Millennium initiated this

action on July 17, 2013.

        The claims in this case include:  (1) violation of the Lanham Act claim based on false and

misleading statements made by Ameritox about the Massachusetts Investigation and deception in its

April 19, 2012 Press Release (Compl. ¶¶ 111-12); (2) consumer protection violations and unfair

business practices in ten states:  Massachusetts, Connecticut, Delaware, Maine, New Hampshire, New

Mexico, Nevada, North Carolina, Ohio, and South Carolina (id. ¶¶ 116-83); (3) common law unfair

competition for conduct in Connecticut, Delaware, and Ohio (id. ¶¶ 184-87); and (4) tortious

interference with business relationships in Massachusetts, Connecticut, Delaware, Maine, Michigan,

New Hampshire, New Mexico, Nevada, North Carolina, Ohio, and South Carolina (id. ¶¶ 188-97).

None of the state laws and conduct at issue in this case are at issue in the Florida Litigation.

---
*(cont'd from previous page)*
Nebraska and Iowa under those states' unfair competition statutes and common laws.  That litigation was dismissed by a
Nebraska state court judge on grounds that, under Eighth Circuit law, the denial of leave to amend in Florida constituted a
final judgment on the merits for *res judicata* purposes.  The Nebraska court's decision is now on appeal before the Nebraska
Court of Appeal.  As detailed below, the Nebraska state court decision has no application here.  (*Infra* at 14.)

## ARGUMENT[4]

### I.   MILLENNIUM'S CLAIMS IN THIS ACTION CANNOT BE BARRED BY THE RULE AGAINST CLAIM-SPLITTING

The doctrine of *res judicata*, and the related concept of claim-splitting, are narrow doctrines intended to serve principles of judicial efficiency as well as conserve party and judicial resources. Curtis v. Citibank*, N.A.*, 226 F.3d 133, 136 (2d Cir. 2000).[5]   To protect plaintiffs from arbitrary applications of the claim preclusion doctrine, and its harsh consequences, "[p]recedent cautions that res judicata is not readily extended to claims that were not before the court, and precedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial." Kearns v. Gen. Motors Corp., 94 F.3d 1553, 1557 (Fed. Cir. 1996).   This policy "is grounded, at least in part, in basic notions of justice and fairness – every claimant is entitled to at least one determination of his or her claim on its merits."   Integrated Techs. Ltd. v. Biochem Immunosystems, (U.S.) Inc., 2 F. Supp. 2d 97, 104 (D. Mass. 1998).   Where, as here, claims are distinct from previous or pending actions, invocation of the doctrines of claim preclusion (whether *res judicata* or claim-splitting) would deprive a plaintiff of its opportunity to litigate for the first time, which is a result that has never been sanctioned under either doctrine.   See Sharp Kabushiki Kaisha v. Thinksharp, Inc., 448 F.3d 1368, 1372 (Fed. Cir. 2006) ("In the present case, not only were the marks different and the prior dismissal solely on default,

---

[4]      "On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 350 (D. Mass. 2011).   "To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. . . . That is, 'factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"   Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Facts should be considered "in the light most favorable to . . . the party opposing the dismissal of the complaint." Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 28 (1st Cir. 2000).   A complaint should be dismissed "only when the allegations are such that the plaintiff can prove no set of facts to support the claim for relief." Id. at 30.   As long as "under some set of facts within the bounds of the allegations and non-conclusory facts in the complaint, [the plaintiff] may be able to prove a claim," the complaint survives a motion to dismiss.   Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 199 (1st Cir. 2001).

[5]      Ameritox cites *res judicata* and claim-splitting cases indiscriminately throughout the Motion, although they base their Motion exclusively on the doctrine of claim-splitting.   Where there are meaningful differences between the doctrines, as they relate to the authority cited herein, Millennium will identify those differences for the Court.

but *res judicata* would deny ThinkSharp its day in court without a clear and persuasive basis for that denial.").

> **A.      As Ameritox Is Forced To Concede, A Number Of Millennium's Claims Arose After The First Amended Counterclaims Were Filed In Florida, And Therefore, Cannot As A Matter Of Law Be Subject To The Rule Against Claim-Splitting**

The rule against claim-splitting cannot be used to "preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." Curtis, 226 F.3d at 139; see also Prime Mgmt. Co. v. Steinegger, 904 F.2d 811, 816 (2d Cir. 1990) ("While a previous judgment may preclude litigation of claims that arose prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."). The rationale for this rule is simple:  a party "has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; [that party] may simply bring a later suit on those later-arising claims." Curtis, 226 F.3d at 139.  Consistent with this rule, any claims that arose after August 29, 2012 (the date on which Millennium asserted its amended counterclaims in Florida) are *per se* outside the realm of the rule against claim-splitting.

At the core of this case are several claims that, as Ameritox concedes, relate to transactions and occurrences that did not take place until well after Millennium's first amended counterclaims were filed in Florida in August 2012.  (Mem. at 3-6, 13, n.2.)  These claims are, therefore, unique as compared to the Florida claims.  (See Ex. 2.)  For example, Ameritox's dissemination of false and misleading statements about the Massachusetts Investigation is one of the unfair and deceptive practices, and one of the types of interference, that forms the basis of Counts II through XIII.  (See Compl. ¶¶ 117(h), 123(h), 130(d), 137(d), 144(h), 151(h), 158(d), 165(h), 172(d), 180(h), 185(f), 191.)  Ameritox acknowledges as much in its Motion, noting that "Millennium's Complaint includes 'new' allegations that Ameritox 'distribut[ed] false and misleading information about the Massachusetts [] Investigation and about its own compliance program and business practice to physicians.'"  (Mem. at 13 n.2.)

As detailed in the Complaint, the events relating to the Massachusetts Investigation allegations occurred in the fall of 2012 and later, following Ameritox's involvement in prompting a Reuters Article to be published regarding Millennium:[6] (i) a public relations firm hired by Ameritox "was largely responsible for a November 2012 Reuters article regarding Millennium. . ." (Compl. ¶ 3); (ii) emails indicating the PR firm's "efforts to arrange for [former Millennium employee Kelly] Nelson to speak with the [Reuters] reporter about Millennium" are from November 2012 (id. ¶ 25); and (iii) "[f]ollowing publication of the Reuters article, which it had manufactured, Ameritox then directed its sales representatives to interfere with Millennium's business relationships with current and potential customers . . ." (id. ¶ 26).  These claims thus arose entirely after August 2012.

Additionally, the Complaint includes allegations relating to Ameritox's misconduct in competing with Millennium for pharmacogenetic testing.  (Id. ¶¶ 70-76.)  "Ameritox entered the pharmacogenetic testing market in or around April 2013," and thus these allegations involve claims that likewise arose entirely after August 2012.[7]  (Id. ¶ 20.)  Because these allegations fall outside of the rule against claim-splitting, Ameritox's Motion seeks dismissal of only portions of Counts II through XIII.

It is black letter law that "Federal Rule of Civil Procedure 12(b)(6) is not an appropriate device to eliminate a portion of a claim."  Hernandez, 2012 WL 5194120, at *6, n.7; McDaniel v. Vilsack, No. 12-723(RWR), 2013 WL 2352187, at *2, n.1 (D.D.C. May 30, 2013) (denying motion seeking only a partial dismissal of a claim); Hill v. United States, 751 F. Supp. 909, 910-11 (D. Colo. 1990) (same). This is a corollary to the rule that when it appears relief can be granted based on any set of facts that could be proven consistent with the allegations, those claims survive a motion to dismiss.  See Rosa v.

---

[6]     Note that Millennium does not base any of its claims on the contents of the Reuters article itself.

[7]     While the other allegations about specific unfair practices do not list dates in the Complaint, transactions and instances of these ongoing behaviors have also occurred after August 2012.  These instances are also excepted from the application of the claim-splitting doctrine.  See e.g., Sec. & Exch. Comm'n v. First New Jersey Sec., Inc., 101 F.3d 1450, 1464 (2d Cir. 1996) ("For example, when a contract was to be performed over a period of time and one party has sued for a breach but has not repudiated the contract, res judicata . . . will not preclude a subsequent suit for a breach that had not occurred when the first suit was brought.").

Park West Bank & Trust, 214 F.3d 213, 215 (1st Cir. 2000) (reversing dismissal where court could not "say at this point that the plaintiff has no viable theory . . . consistent with the facts alleged").

The court's holding in Hernandez is directly on point. In that case, the plaintiff asserted a variety of putative class claims stemming from the defendant's allegedly improper access to and dissemination of information from the plaintiff's mobile phone. Hernandez, 2012 WL 5194120, at *1. The defendant filed a Rule 12(b)(6) motion seeking dismissal of each of the plaintiff's claims, including his claim for unfair, unlawful, and fraudulent business practices under Cal. Bus. & Prof. Code § 17200 *et seq.* Id. The court found that the plaintiff had adequately pled claims for unfair and unlawful business practices, but he had failed to plead his claim for fraudulent business practices with the requisite degree of particularity. Id. at *5. Nevertheless, observing that a motion to dismiss cannot be used to dismiss only a portion of a claim, the court denied the defendant's motion to dismiss that claim in its entirety. Id. at *6. ("Plaintiff has sufficiently pled two of the three prongs [of the claim], which is sufficient to withstand a motion to dismiss.").

The rule against claim-splitting forms the sole basis on which Ameritox has sought dismissal of Counts II through XIII of the Complaint. Because, as established above, key elements of these claims arose after the date of Millennium's amended counterclaims in Florida, Ameritox's Motion to dismiss these claims should be denied in its entirety without further inquiry.

**B.      Even If This Court Were To Consider The Claim-Splitting Issue In Depth, Which It Need Not, There Can Be No Finding Of Impermissible Claim-Splitting In This Case**

To ensure that the rule against claim-splitting is applied only in the narrow circumstance for which it was created -- i.e., to prevent repeated litigation of the same claims -- courts must engage in a detailed inquiry to determine whether the claims in the two actions arise out of the same events, transactions or occurrences, and also involve the same nucleus of operative facts. See Curtis, 226 F.3d at 140 (the rule that "plaintiffs may not file duplicative complaints in order to expand their legal rights . . . applies only to the *Curtis II* claims arising out of the same events as those alleged in *Curtis*

9

*I.*").  As the court in <u>Curtis</u> cautioned, "[a] court must be <u>careful</u>, when dismissing a second suit between the same parties as duplicative, <u>not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same</u>."  <u>Curtis</u>, 226 F.3d at 136.  Consistent with this precedent, the "cursory side-by-side comparison" on which Ameritox's Motion is premised is plainly insufficient as a matter of law. (Mem. at 12.)

To assist the Court in assessing whether claims are the <u>same</u> for purposes of a claim-splitting analysis, the First Circuit "has enumerated several factors which are useful in determining whether a party has advanced claims in multiple litigations which derive from the same nucleus of operative facts. . . . These factors include: 1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations."  <u>Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.</u>, 48 F.3d 576, 584 (1st Cir. 1995). The fact that the two actions may involve the same general course of conduct is not in itself sufficient. <u>See</u> <u>First New Jersey</u>, 101 F.3d at 1463 ("the fact that both suits involved essentially the same course of wrongful conduct is not decisive . . . nor is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues"); <u>Prime Mgm't Co.</u>, 904 F.2d at 815 ("The fact that both suits involved essentially the same course of wrongful conduct is not decisive."); <u>Leonard v. Stemtech Int'l, Inc.</u>, No. 12-86-LPS-CJB, 2012 WL 3655512, at *8-9 (D. Del. Aug. 24, 2012) (no improper claim-splitting, even though photographer asserted same legal claim regarding the same work against the same defendant for similar conduct).

When one employs the required degree of rigor in assessing the claims in this action and the Florida Litigation, rather than the "cursory" examination advocated by Ameritox, it is apparent that apart from the superficial similarity between the claims alluded to by Ameritox, the claims are <u>not the same</u>. Indeed, as set forth in detail in the chart attached as Exhibit 1, there is <u>no</u> overlap between the states in which Ameritox is alleged to have committed its illegal acts or the applicable state laws; the illegal acts

were committed in the various regions by <u>different</u> Ameritox sales personnel and involved <u>different</u> health care providers; and the evidence of the illegal transactions engaged in by Ameritox sales personnel will be <u>different</u>.  (<u>See</u> Ex. 1.)  Thus, the facts in the two actions do not form a "convenient trial unit" and treating the facts as a unit would not conform with the parties' expectations.

In cases such as this one, where the transactions, witnesses, evidence and geographical areas at issue are different, courts have consistently declined to preclude the filing of subsequent litigation.  <u>See</u> <u>First New Jersey</u>, 101 F.3d at 1464 ("If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion."); <u>Greenberg v. Bd. of</u> <u>Governors of the Fed. Reserve Sys.</u>, 968 F.2d 164, 168 (2d Cir. 1992) ("preclusion is limited to the transaction at issue in the first action.  Litigation over other transactions, though involving the same parties and similar facts and legal issues, is not precluded.").

The court's decision in <u>National Labor Relations Bd. v. United Technologies, Corp.</u> is instructive on this point. 706 F.2d 1254, 1259-60 (2d Cir. 1983).  In that case, an employer argued that a proceeding about its rule prohibiting employees from union solicitation was barred by an earlier decision on the same rule.  <u>Id.</u>  Both actions involved retaliation against employees.  <u>Id.</u>  To frame the analysis, the Court explained:

> But the circumstance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first, and that litigation of the second is therefore precluded by the judgment in the first.  Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.

<u>Id.</u>  Ultimately, the court had "little difficulty" in concluding the two claims were different, where "the events giving rise to the two proceedings occurred at different places, and more than a decade apart; they

concerned different employees engaged in different acts; and they involved different employer conduct in response to those acts."  Id.[8]

Consistent with the court's holding in National Labor Relations Bd. and the other established authority cited above, Ameritox's attempt to avoid being held responsible for its illicit conduct by its flawed invocation of the claim-splitting doctrine must be denied.

### C.    The Denial Of Millennium's Motion For Leave To Amend In Florida On Timeliness Grounds Cannot Serve As A Basis To Bar Litigation Of The Claims In This Action

Ameritox attempts indirectly to ascribe some effect to the Florida court's denial of Millennium's motion for leave to amend on timeliness grounds.  Tacitly conceding that the denial of leave to amend does not constitute *res judicata* in this Circuit by electing not even to make the argument, Ameritox argues instead that Millennium "cannot file a new lawsuit to 'end-run' an order denying leave to amend in an earlier suit."  (Mem. at 11, 14.)  Ameritox's argument is baseless.  Millennium has neither sought to skirt the Florida court's order, which was purely a matter of case management for that particular action; nor does a denial of leave to amend on timeliness grounds have any impact on the Court's claim-splitting analysis in this Circuit.

---

[8]    None of the authority cited by Ameritox compels a different result.  Three of Ameritox's cases involved instances where new claims were not barred by claim-splitting.  See Curtis, 226 F.3d at 140 (claims based on events arising after the first amended complaint was filed in the first action should not have been dismissed as duplicative); Leonard, 2012 WL 3655512, at *9 (second action alleging additional copyright infringement not duplicative); Apparel, 48 F.3d at 585 (claims asserted in supplementary pleadings seeking to enforce a judgment were distinct from the claims asserted in the underlying arbitration).  And the other cases are inapposite.  See Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991) (*res judicata* applied where "the claims all sought recovery in consequence of the same occurrence: defendant's unilateral termination of the plaintiff's employment."); Johnson v. SCA Disposal Servs. of New England, Inc., 931 F.2d 970, 975 (1st Cir. 1991) (both suits for costs of cleanup of hazardous waste "arose from the same bungled lease deal with SCA."); Dorsey v. Jacobson Holman PLLC, 764 F. Supp. 2d 209, 210 (D.D.C. 2011) ("Both lawsuits address the same set of facts relating to Ms. Dorsey's leave status and separation from employment."), aff'd, 476 F. App'x 861 (D.D.C. 2012); Silva v. City of New Bedford, 660 F.3d 76, 78 (1st Cir. 2011) (both suits arose "from a June 2007 altercation between the plaintiff[] and two police officers at a nightclub in New Bedford, Massachusetts."), cert. denied, 132 S. Ct. 1808 (2012); Silva v. City of New Bedford, Mass., 677 F. Supp. 2d 367, 368 (D. Mass. 2009) (same); Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 329 F. Supp. 2d 574, 580 (D. Md. 2004) ("Both lawsuits involve breaches of the same contract, committed by the same party and question the extent of the parties' agreed upon obligations."); Oxbow Energy, Inc. v. Koch Indus., Inc., 686 F. Supp. 278, 282 (D. Kan. 1988) ("each misrepresentation alleged by plaintiffs arose out of a single incident and resulted in a single wrong."); Hatch v. Trail King Indus., Inc., 699 F.3d 38, 40-41 (1st Cir. 2012) (both suits arose out of a workplace accident); Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp., 95 F.3d 358, 359 (5th Cir. 1996) (all three complaints alleged the same unlawful water pollution in a particular lake).

It is important that the motion for leave to amend in Florida be placed in the proper context.  On February 21, 2013, 16 months before the scheduled trial date and before any meaningful discovery had been taken in the action, Millennium sought leave to amend its counterclaims in the Florida Action. (Mem. at Ex. E.)  Without addressing the merits of the proposed amended claims, the Florida court denied Millennium's motion, finding that Millennium had failed to show the requisite "good cause" for seeking leave to amend after the Court's pleading deadline.  (Id. at Ex. G.)  The Florida court gave no indication that Millennium should be precluded from asserting the proposed amended counterclaims in a separate litigation.  (Id.)  Ameritox's manufactured argument that Millennium is somehow trying to make an "end run" around the Florida court's ruling is pure fiction.

Ameritox's argument fares no better as a matter of law.  It is established that a denial of a motion for leave to amend on timeliness grounds does not have preclusive effect.  "[D]enial of a motion to amend will not inevitably preclude subsequent litigation of those claims set out in a proposed new complaint."  Curtis, 226 F.3d at 139.  Indeed, where "the denial of leave to file the second amended complaint was clearly not based on the merits, but rather on the procedural ground of untimeliness," claim preclusion would "not prevent litigation of claims arising after the filing of plaintiffs' first amended complaint."  Id.; Hladky v. UCB Films, Inc., No. 00-4062-RDR, 2001 WL 311193, at *4 (D. Kan. Feb. 6, 2001) ("Here, the denial of the motion to amend was not based on the merits, but rather on the procedural grounds of untimeliness.  Accordingly, plaintiff is not prevented from asserting any claims that arose after the filing of the complaint in the first action.").  Courts in this District are in accord:

> The fact that a judge has denied a motion to amend which seeks leave to add a new claim to an existing case should have no bearing either way on the question whether plaintiff may file the new claim as a separate lawsuit, unless the denial of leave to amend is itself based on, and thus constitutes, an adjudication of the merits of such proposed new claim.

Integrated Techs., 2 F. Supp. 2d at 103 (emphasis added).[9]

_____
[9]     In rendering its decision, the court in Integrated Techs. expressly rejected the Eighth Circuit's statement in King v. Hoover Group, Inc., 958 F.2d 219 (8th Cir. 1992), that "[i]t is well settled that denial of leave to amend constitutes res

*(cont'd)*

Ameritox's authority does not suggest a contrary result. (Mem. at 14-15.) Rather, in each of the cases cited by Ameritox, the claims brought in the subsequent litigation were transactionally related to the claims still pending in the first action and arose before the filing of the most recent complaint in the first action. Thus, those claims would have been barred under the rule against claim-splitting irrespective of the failed effort to secure leave to amend. (*Supra* n.8.)[10] Unlike in those cases, as set forth above, a number of Millennium's claims were based on events which transpired <u>after</u> the latest counterclaims were filed in Florida. (*Supra* at 7-8.) As for the remainder of the claims, they arise out of <u>different</u> transactions and occurrences, in <u>different</u> geographical regions, involve relationships with <u>different</u> health care providers, and involve <u>different</u> witnesses and evidence than the claims pending in Florida. (*Supra* at 10-11.) Thus, there can be no finding that they are transactionally related under a claims-splitting analysis, regardless of the denial of leave to amend by the Florida court.

---

*(cont'd from previous page)*

judicata on the merits of the claims which were the subject of the proposed amended pleading." <u>Integrated Techs.</u>, 2 F. Supp. 2d at 101. This is the precise language on which the Nebraska state court relied in the Nebraska Litigation. (In that decision, the Nebraska court found that the Florida court's denial of Millennium's motion for leave to amend was *res judicata* as to state law claims brought in Nebraska against an Ameritox sales representative regarding his false and misleading statements in Nebraska and Iowa.) Having tacitly conceded that there is no *res judicata* effect in this Circuit from the Florida court's denial of leave to amend, any attempt by Ameritox now to argue that there is a preclusive effect from that ruling must fail. <u>See</u> <u>Noonan v. Wonderland Greyhound Park Realty LLC</u>, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (finding arguments not raised in opening brief to be "waived as a means to support the pending motion to dismiss"). Nothing about the Nebraska court's decision would compel an alternative result here. That case is distinguishable from this one on its facts: Ameritox was not a party there, the defendant there is not a party here, no claims asserting violations of Nebraska or Iowa law are asserted here, and Ameritox's conduct in Nebraska and Iowa is not before the Court here (the Complaint's reference to Brian Ward's false and misleading document in Iowa is merely an example of the type of illegal and deceptive conduct encouraged by Ameritox. (Compl. ¶¶ 26-29.)) Moreover, the analysis used by the Nebraska court to compare that case to the Florida Litigation is not the same analysis this Court will undertake in connection with this motion: the Eighth Circuit authority relied on by the Nebraska court in its analysis (<u>King</u>) has been expressly rejected here and Ameritox has not made an argument that the Florida Court's decision was *res judicata*, the argument accepted by the Nebraska judge.

[10]     Ameritox's suggestion that Millennium's "only recourse" was to appeal the denial of its motion for leave to amend is similarly without merit. (Mem. at 15.) As courts in this District have held, the denial of leave to amend has "no bearing" on whether those claims may be asserted in this case. <u>Integrated Techs.</u>, 2 F. Supp. 2d at 103. Moreover, the lone case cited by Ameritox for this point, <u>Johnson v. SCA Disposal Servs. of New England, Inc.</u>, involved a situation, unlike here, where the plaintiff sought to amend to add a new theory of recovery based on the <u>same wrong</u>. 931 F.2d 970, 976, n.19 (1st Cir. 1991). Thus, ordinary principles of claim-splitting, which are inapplicable here, were properly applied.

## II.   MILLENNIUM HAS STATED A VIABLE CLAIM FOR FALSE AND MISLEADING ADVERTISING IN VIOLATION OF THE LANHAM ACT

Section 43(a) of the Lanham Act prohibits making a "false or misleading description of fact, or false or misleading representation of fact . . . in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).  To succeed on a false advertising claim under Section 43(a), a plaintiff must prove "either that an advertisement is false on its face or that the advertisement is literally true or ambiguous but likely to mislead and confuse consumers."  Clorox, 228 F.3d at 33.  To state a claim for false advertising under the Lanham Act, a plaintiff must allege:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

McGrath & Co., LLC v. PCM Consulting, Inc., No. 11-10930-DJC, 2012 WL 503629, at *3 (D. Mass. Feb. 15, 2012) (quoting Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310-11 (1st Cir. 2002)).  Millennium has satisfied each of these elements.

### A.   Millennium Has Adequately Stated A Claim Based On Ameritox's Representations Relating To The Massachusetts Investigation

Millennium has alleged facts sufficient to satisfy each of the elements of a Lanham Act claim with respect to Ameritox's representations about the Massachusetts Investigation:  (i) Ameritox has made false and misleading statements about the Massachusetts Investigation to health care providers in multiple states; (ii) the statements deceived a substantial number of health care providers and materially influenced their decision to choose Ameritox over Millennium; and (iii) Millennium has been harmed through the loss of customers, goodwill and future business.  (Compl. ¶¶ 1, 109-113.)  See McGrath, 2012 WL 503628, at *4-7 (finding a Lanham Act claim sufficiently pled based on similar allegations).

Ameritox's argument that "[a] claim for false advertising in violation of Lanham Act § 43(a), 15 U.S.C.A. § 1125(a), requires an affirmative misrepresentation," and that a failure to disclose does not trigger a violation is disingenuous.  (Mem. at 16 (citing J. Thomas McCarthy, 5 McCarthy on Trademarks ("McCarthy"), at § 27:65 (4th ed.)).)  As Ameritox is aware, but fails to disclose to the Court, the same section of the McCarthy treatise goes on to state that a failure to disclose a material fact (i.e., a material omission) is actionable under the Lanham Act:

> While a failure to disclose facts is not actionable under § 43(a), it is equally true that <u>a statement can be actionable under § 43(a) if it is affirmatively misleading, partially incorrect, or untrue as a result of failure to disclose a material fact. That is, telling a half-truth may be "misleading" and trigger an obligation to tell the whole truth in order to make the advertising claim "un-false."</u>

MCCARTHY, *supra*, at §27:65.[11]  The case authority cited by Ameritox is in accord.[12]

Ameritox's argument fares no better as a factual matter in this case.  (Mem. at 17.)  Contrary to Ameritox's argument, the Complaint details a number of affirmative misrepresentations regarding the Massachusetts Investigation separate and apart from the contents of the Reuters Article, which are not challenged by Millennium's claims.  Those misrepresentations included:  "embellishing the article with *additional* false and misleading information about the Massachusetts Investigation" (Compl. ¶ 26,

---

[11]     The Senate Report that Ameritox cites (Mem. at 16) also addresses pure omissions, not omissions that cause another statement to be false or misleading: "The second deleted proposed language stating that omissions of material information which misrepresent the nature, characteristics or qualities of a product or service are actionable under the section.  This deletion was made to respond to concerns that it could be misread to require that all facts material to a consumer's decision to purchase a product or service be contained in each advertisement."  Senate Judiciary Comm. Report on S. 1883, S. Rep. No. 100-515, at 41 (Sept. 15, 1988).

[12]     See Gillette, 946 F. Supp. at 131 ("A failure to disclose a material fact can support a claim under section 43(a)"); Register.com, Inc. v. Domain Registry of Am., Inc., No. 02 Civ. 6915(NRB), 2002 WL 31894625, at *14 (S.D.N.Y. Dec. 27, 2002) ("According to the leading treatise on trademarks and unfair competition law, 'a failure to disclose facts is not actionable under [Lanham Act Section] 43(a),' unless the failure is relevant to an affirmative statement that is made false or misleading by its omission.") (citing McCarthy, *supra*, at § 27:13); Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc., 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007) (same, citing both Register.com and McCarthy); Universal City Studios, Inc. v. Sony Corp. of Am., 429 F. Supp. 407, 410 (C.D. Cal. 1977) ("under certain circumstances, clarification in the form of an additional statement is necessary in order for an advertiser to escape liability under § 1125(a)."); K&N Eng'g, Inc. v. Spectre Performance, No. EDCV 09-01900-UAP (DTBx), 2011 WL 4387094, at *18 (C.D. Cal. Sept. 20, 2011) (listing cases "in which omissions have been found to make a statement untrue generally concern[ing] a negative comparison with a competitor's product that omits information that would weaken a superiority claim.").

emphasis in original); "disseminat[ing] statements, identical or similar to those contained in the document distributed by Ward, to a substantial portion of health care providers in Massachusetts and elsewhere" (id. ¶ 29); "caus[ing health care providers] to believe that they will be less likely to become involved in an investigation if they do business with Ameritox" (id. ¶ 111).  Coupled with the detailed factual allegations as to each of the other elements of its Lanham Act claim (Compl. ¶¶ 108 - 114), nothing more is required of Millennium to state a claim under the Lanham Act.

### B.     Millennium Has Stated A Claim Based On Ameritox's April 2012 Press Release

Ameritox contends that Millennium's claim based on the April 2012 Press Release "is wrongly based on omissions," but then it curiously acknowledges the affirmative statements that Millennium identified in the Complaint as being misleading.  (Mem. at 18.)  As detailed in the chart that appears in Paragraph 35 of the Complaint, Millennium has identified a number of false and misleading statements in the April 2012 Press Release (both affirmative statements and statements made misleading by material omissions), and explains why each is deceptive in violation of the Lanham Act.  (See Compl. ¶ 35.)  Each is actionable under the Lanham Act.  See Gillette, 946 F. Supp. at 131-32.

Ameritox's argument that the remainder of the press release merely provides the necessary context to make the challenged statements truthful and not misleading is baseless.  (Mem. at 18-19.) Indeed, the statements that Ameritox identifies -- "[t]he current Ameritox management team was brought aboard post-2005 events, which led to a 2010 Corporate Integrity Agreement" -- do not disclose facts sufficient to cure the other false and misleading statements.  (Mem. at 19.)  They do not explain that Ameritox was investigated for wrongful conduct, let alone illegal kickbacks that constituted Medicare fraud, or what a "Corporate Integrity Agreement" is (i.e., a form of consent decree designed to punish companies for illegal conduct).  (Compare Mem. at 19 to Compl. ¶ 35.)[13]

---

[13]     Although it is true that in rare cases an alleged misrepresentation "in context, is such that no reasonable consumer could be misled" may be dismissed as a matter of law, this is an extraordinarily high standard at the pleading stage. (Mem. at

*(cont'd)*

Ameritox also appears to argue (Mem. at 20) that the claim based on the following statement about political contributions in the April 2012 Press Release should be dismissed as being literally true:

> Ameritox invests in science that advances patient pain-medication monitoring and not in political campaigns . . . . That said, its San Diego competitor supports state-government legislative efforts and funds those opinions with PAC resources.  In Florida alone, where pending key legislation benefits that company, it has targeted $20,000 in contributions.

(Compl. ¶ 35.)  Putting aside Ameritox's nonsensical contention that the above statement does not unambiguously mean that "Ameritox does not 'invest in political campaigns,'" (Mem. at 20), there are two reasons why this argument does not support dismissal at this stage of the litigation.

As an initial matter, Millennium alleges that this statement is either "literally false and/or likely to deceive a substantial portion of the relevant purchasing public," (Compl. ¶ 109), and thus, even if this statement is ultimately deemed not to be literally false, it is still actionable as being likely to mislead customers.  See Clorox, 228 F.3d at 34 (district court erred in "dismissing the allegation that the modified campaign was not false or misleading simply because it found the tag line, read in isolation, to be literally true"); Time Warner Cable, Inc. v. DirecTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007) ("Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.").  It is generally inappropriate to determine literal falsity at the pleading stage:  "Whether an advertisement is literally false is typically an issue of fact."  Clorox, 228 F.3d at 34.  Millennium's allegations of falsity are therefore sufficient to survive a motion to dismiss.

Finally, Ameritox argues that "Millennium has not alleged how the purchasing decisions of Millennium's customers would be influenced even if the statement 'Ameritox invests in science that

---

*(cont'd from previous page)*
19 citing Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).)  Unlike here, the claims dismissed in Haskell were sweepstakes statements that were either clear puffery (e.g., "You've never been closer to having a chance to win $5,000,000.00!") or statements where the allegedly omitted information was repeatedly disclosed.  Haskell, 857 F. Supp. at 1399-1400.  Nowhere in the press release did Ameritox provide the necessary context to inform the readers that Ameritox had been sanctioned for illegal conduct and that the Corporate Integrity Agreement was part of its punishment.

advances patient pain-medication monitoring and not in political campaigns' is arguably false." (Mem. at 20.) Ameritox is wrong. Millennium has alleged that the statements in the April 2012 Press Release, including this particular statement, have "influenced health care providers to choose it over Millennium for laboratory testing services," and conveyed that Ameritox's "practices and services are superior to Millennium's." (Compl. ¶ 112.) The case Ameritox cites, <u>William H. Morris Co. v. Group W, Inc.</u>, reversed a judgment because "[t]he record contains no evidence that the erroneous statement had that impact" of "caus[ing] damage by influencing pharmacists to forego purchasing" the plaintiff's product, and thus involves an inquiry into the evidentiary record that goes far beyond the four corners of the complaint, which is the universe of the record for purposes of a motion to dismiss. <u>William H. Morris v. Group W, Inc.</u>, 66 F.3d 255, 257 (9th Cir. 1995). Ameritox's Motion as to this claim should be denied.[14]

### III.  In The Unlikely Event That The Court Grants Any Portion Of Ameritox's Motion, Millennium Should Be Granted Leave to Amend

Should the Court dismiss any of Millennium's claims, Millennium asks to be granted leave to amend its Complaint. As is well-established under the law, leave to amend should be routinely granted "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by allowance of the amendments previously allowed, undue prejudice to the opposing party by virtue of amendment, futility of amendment, etc." <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires"). Indeed, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it

---

[14] It bears noting that, contrary to Ameritox's argument, Millennium does not base its First Cause of Action for violation of the Lanham Act on the allegations about the April 2011 "Dear Doctor" Letter written and distributed by Ameritox. (Mem. at 17-18.) Paragraphs 32 and 33 of the Complaint, the two paragraphs discussing the "Dear Doctor" Letter, were included in the Complaint merely to provide an example of Ameritox's "pattern and practice of making false and misleading statements about Millennium in the context of publicizing legal proceedings by failing to disclose material facts." (Compl. ¶ 31.) The cause of action itself does not refer to the "Dear Doctor" Letter, referring only to Ameritox's "false and misleading representations about the Massachusetts Investigation and other matters" (<u>id.</u> ¶111), and "false and misleading representations contained in its April 19, 2012 Press Release" (<u>id.</u> ¶111), which are the two categories of misrepresentations that form the basis of the Lanham Act cause of action. (<u>Id.</u> ¶¶ 107-114.) The Court should, therefore, ignore Ameritox's arguments concerning the April 2011 "Dear Doctor" Letter.

is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." <u>Foman</u>, 371 U.S. at 182, 83 S. Ct. at 230; <u>Williams v. Astra USA, Inc.</u>, 68 F. Supp. 2d 29, 33 (D. Mass. 1999) ("If a plaintiff has at least colorable grounds for relief, justice does . . . require leave to amend"); <u>Alves v. Daly</u>, No. 12-10935-MLW, 2013 WL 1330010, at *9-11 (D. Mass. March 29, 2013) (where plaintiff sought to clarify allegations, along with adding new claims, court found "[j]ustice requires that plaintiff be allowed the opportunity to amend his Complaint.").

In the unlikely event that the Court finds any deficiencies in the Complaint, Millennium requests an opportunity to cure them by asserting additional facts that further distinguish the claims in this action from those pending in Florida and that provide additional details concerning the false and misleading statements by Ameritox.  Given the early stage of this litigation, and the absence of any bad faith or undue delay on Millennium's part, Millennium should be given an opportunity to amend its complaint if the Court finds any merit in Ameritox's motion.

## CONCLUSION

For the foregoing reasons, Millennium respectfully asks this Court to deny Ameritox's Rule 12(b)(6) Motion to Dismiss in its entirety.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Millennium respectfully requests a hearing on this Motion.

Dated:  Boston, Massachusetts
       October 18, 2013

Respectfully submitted,

/s/  Peter Simshauser
Peter Simshauser (BBO #665153)
James R. Carroll (BBO #554426)
Christopher A. Lisy (BBO #662283)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02018
(617) 573-4800
Peter.Simshauser@skadden.com

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I, Peter Simshauser, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 18, 2013.

Dated: October 18, 2013    /s/ Peter Simshauser
                          Peter Simshauser